(100 App. Div. 87)

### GOODHINES v. CHASE.

(Supreme Court, Appellate D'vision, Fourth Department. January 4, 1905.)

1. MASTER AND SERVANT—DEATH OF SERVANT—DEFECTIVE APPLIANCES—PROXIMATE CAUSE.

   In an action for death of an engineer, caused by the explosion of a blowpipe, evidence *held* insufficient to show that a defect in the pipe was the cause of the accident.

2. SAME—CONTRIBUTORY NEGLIGENCE.

   Where plaintiff's intestate was killed by the explosion of a blow-off, and it did not appear whether it was caused by a defective coupling, which had served without accident for several years, or by deceased opening a globe valve therein before opening the stopcock, as required by his directions, or because he in some manner improperly or carelessly interfered with an appliance which he had been instructed not to meddle with, the proof of decedent's freedom from contributory negligence was insufficient to sustain a recovery.

   Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Herkimer County.

Action by Ella M. Goodhines, as administratrix of the estate of Jacob C. Goodhines, deceased, against Lewis S. Chase. From a judgment in favor of plaintiff, and from an order denying defendant's motion for new trial on the minutes, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Charles D. Thomas, for appellant.

H. C. Sholes, for respondent.

McLENNAN, P. J. At about 6 o'clock in the afternoon of the 15th day of April, 1903, plaintiff's intestate, who at the time was in defendant's employ, engaged in firing a boiler and running a 60 horse power engine, sustained injuries from which he died about two hours

later. He had been so employed for about a year previous, was familiar with the machinery and the manner of its operation, and was competent to perform the duties of his employment. The evidence indicates that the injuries were occasioned by the explosion of the blow-off appliance, so called, attached to the boiler, which caused the parts to be thrown with great violence, and permitted steam to escape in great quantities. Many bones of the body of the deceased were broken, and he was badly scalded. The evidence also tends to show that the blow-off appliance was defective, and that the defendant knew or ought to have known that fact, and is of a character to support the finding that defendant was guilty of negligence; but it fails to establish that such negligence was the cause of the accident, or to indicate even in the slightest degree that plaintiff's intestate was free from contributory negligence. Therefore the judgment and order appealed from must be reversed.

The defendant for many years prior to the accident had been engaged in operating a sawmill, gristmill, cheese box, and sash and blind factory at South Columbia, Herkimer county, N. Y., which was controlled and managed by his brother, Walter E. Chase, as general manager. All the machinery in the different departments was chiefly propelled by steam power; the engine and boiler being in a building separate from the mill, and in which the deceased was the only employé who had any duties to perform in the usual course of operation. The boiler, which, with its attachments, is the only part of the machinery involved in this action, was incased in a brick wall about a foot thick. Connected with it by means of a flange was a three-inch pipe extending from the boiler through the incasing wall, and made rigid in it. To the end of such pipe there was screwed a globe valve. In it was fastened a short nipple, to which, in turn, was attached a stopcock, and screwed into it was an elbow, from which a pipe extended perpendicularly to near the floor. At its end was another elbow, and from it a pipe extended horizontally through the wall of the engine room. The purpose of such blow-off appliance was to enable the boiler to be cleaned of sediment and to freshen the water, and was used each day at about the time of shutting down the mill. The deceased had been given specific instructions by defendant's superintendent as to how to manipulate such blow-off appliance. He was directed to first open the stopcock by means of a long-handled wrench, and then to slowly turn the globe valve, which would permit the steam to pass unobstructed through the other parts composing the blow-off appliance. He was also directed, when the water in the boiler was sufficiently blown out, to first gradually close the globe valve, and then shut the stopcock. So it is apparent, if such instructions had been followed, comparatively little pressure could be exerted upon the system of pipes beyond the globe valve when the blow-off apparatus was being operated. It also appears, without contradiction, that the deceased was directed to maintain a steam pressure of substantially 70 pounds, and that an indicator was at hand to inform him of the pressure being exerted at any given time. The duties of the deceased, under his specific instructions, were confined to keeping up the fire, seeing to it that the boiler was supplied with sufficient water, keeping the engine properly oiled, putting on or

shutting off the power as required, and blowing off the boiler practically at the close of each day's operation of the mill. He was expressly instructed not to attempt to repair any defective appliance or to endeavor to regulate its operation, but in case of difficulty to immediately inform the superintendent. Notwithstanding such instructions, it appears that some weeks prior to the accident the deceased, upon his own motion, attempted to correct a defect in one of the sections of pipe composing the blow-off, and the evidence indicates that in making such correction such force was used as might have weakened the structure. Such attempt was not known to the defendant, or what occurred in respect thereto.

There is evidence tending to show that the connection between the pipe attached to the boiler and the globe valve was defective, and that such defect was known to the defendant. The evidence, however, wholly fails to justify the conclusion that such defect, if it existed, caused the accident. Whether the accident occurred because of it, or for some other cause, is purely speculative. The weakened joint might have caused it, as might a variety of other causes—notably, the opening of the globe valve before the stopcock was opened. When found after the accident, the parts composing the blow-off apparatus were separated and scattered about the room; the only definite information obtainable respecting them being that the globe valve and the stopcock were both open. This condition would indicate very clearly that the explosion did not occur by reason of any defect in the joint between the pipe extending from the boiler to the globe valve. It and the stopcock being open, no pressure could be exerted upon such joint. With the stopcock and globe valve both open, no obstruction was offered to the escaping steam. How, then, did the accident occur? Was it because of a defective coupling which had served its purpose for years without accident, or was it because the deceased did something in violation of his orders, to wit, opened the globe valve before opening the stopcock, or because he in some manner improperly or carelessly interfered with the blow-off appliance, which he was expressly instructed not to meddle with? The evidence wholly fails to show what the deceased did or did not do in the premises. Whether he operated the blow-off as directed, or in violation of such directions, is in no manner shown by the evidence. Whether the accident resulted from the defective pipe, or because of some careless act of the deceased, is equally undisclosed. The accident may have resulted because of a defective union of the pipe attached to the boiler and the globe valve; also it may have resulted wholly independent of such defect, if it existed, and because in blowing off the boiler the deceased opened the valve before he opened the stopcock, or because of some other improper manipulation on his part; because he permitted too great a pressure of steam; because the water in the boiler was permitted to get too low; or because the deceased, in violation of his orders, was attempting to change or remedy some defect in the blow-off, as he had done some weeks before. Whether the explosion resulted because of the negligence of the defendant, or on account of the negligence of the deceased, it is impossible to determine from the evidence. All the evidence discloses is that the decedent was in charge

of the boiler; that a certain appliance connected therewith, certain parts of which were defective, exploded; and that as a result he sustained injury which caused his death. Whether such defect caused the explosion and death, or whether it was caused by some negligent act of the deceased, does not appear. Such being the state of the evidence, it must be held that the plaintiff failed to meet the burden of showing that her intestate was free from contributory negligence.

It is undisputed that in actions to recover for the death of another resulting from negligence, where there is no eyewitness of the accident, freedom from contributory negligence on the part of the decedent can be established by circumstances; but this court has recently held that in the absence of testimony, either direct or inferential, that the intestate had exercised the cautions demanded of him, it could not be said that the plaintiff had shown that the intestate was free from contributory negligence. Scheir v. Quirin, 77 App. Div. 625, 78 N. Y. Supp. 956. In the case at bar no circumstances are disclosed which tend to prove freedom from contributory negligence on the part of the deceased.

In Wiwirowski v. Lake Shore Railroad Company, 124 N. Y. 420, 26 N. E. 1023, the rule is stated in the headnote as follows:

"While want of contributory negligence on the part of a person killed at a railroad crossing may be established by inferences drawn from the circumstances, such an inference may not be drawn simply from a presumption that a person exposed to danger will exercise care and prudence in regard to his own safety.

"In an action to recover damages for alleged negligence causing death, freedom from contributory negligence must be proved; and where the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a refusal to nonsuit is error."

The cases relied upon by the respondent's counsel as sustaining the proposition that freedom from contributory negligence may rest upon inferences drawn from proven circumstances do not apply to a case like the one at bar. The leading case of the class to which respondent calls attention is Galvin v. Mayor, 112 N. Y. 223, 19 N. E. 675. There the deceased, in the regular performance of his duty, went into an open hatchway in the sidewalk, the covering of which—a heavy iron grating—was thrown back, but not properly fastened. It fell, and caused the death. No one saw the door fall, but it was held that the inference might have been properly drawn from the facts and circumstances that the deceased was free from contributory negligence. There the deceased had no duty to perform in respect to the grating, and he entered the hatchway in the discharge of his duty. Therefore the inference was permissible that he did not pull the grating over upon himself. If an employé of the defendant, other than the deceased, had gone into the boiler room in the regular course of his employment, having no duty to perform relating to the boiler, and an explosion had occurred, of the character in question, and which had caused his death, the inference would have been permissible that such explosion was not caused through his negligence. But in the case at bar plaintiff's intestate was in charge of the boiler and the blow-off appliance connected therewith; it was all under his charge and supervision; and therefore it is not enough to show that an accident occurred, and that a certain

part of the appliance was defective, but, in addition, it is incumbent upon the plaintiff to show that the deceased did no act which contributed to the accident. Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537. In an action for negligence "it is incumbent upon the plaintiff to show by a preponderance of evidence such facts and circumstances as will satisfy the minds of the jurors that the deceased exercised proper care and prudence, and did not omit the precautions of a prudent man, under the circumstances. The law demands proof, and not mere surmises." Riordan v. Steamship Co., 124 N. Y. 655–659, 26 N. E. 1027; Bond v. Smith, 113 N. Y. 378, 21 N. E. 128; Hoag v. N. Y. C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648. In the case at bar we think the plaintiff wholly failed to prove any facts or circumstances which would justify the inference that her intestate was free from contributory negligence. It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur, except SPRING and WILLIAMS, JJ., who dissent upon the ground that the case was properly submitted to the jury.